1  KAREN P. HEWITT
   United States Attorney
2  REBECCA S. KANTER
   Assistant U.S. Attorney
3  California State Bar No. 230257
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-6747
   Fax: (619) 235-2757
6  E-mail: rebecca.kanter@usdoj.gov

7  Attorneys for Plaintiff
   United States of America

8

9                  UNITED STATES DISTRICT COURT

10                SOUTHERN DISTRICT OF CALIFORNIA

11
   UNITED STATES OF AMERICA,        )  Criminal Case No. 08cr1167-BEN
12                                   )
              Plaintiff,             )  **RESPONSE AND OPPOSITION TO**
13                                   )  **DEFENDANT'S MOTIONS:**
         v.                          )
14                                   )  **(1) TO COMPEL DISCOVERY; AND**
                                     )  **(2) TO FILE FURTHER MOTIONS**
15  ARA AVETYANTS, et. al.,          )
                                     )     Date:       July 14, 2008
16                                   )     Time:       2:00 p.m.
              Defendant.             )     Courtroom:  3
17  _____ )     The Honorable  Roger T. Benitez

18          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

19  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby

20  files its Response and Opposition to Defendant's Motions to Compel Discovery and File Further

21  Motions.  This Response and Opposition is based upon the files and records of this case, together with

22  the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's

23  Motion for Reciprocal Discovery.

24  //

25  //

26  //

27  //

28  //

                                                      Criminal Case No. 08cr1455-BEN

**I**

**STATEMENT OF FACTS**

**A.    INITIAL STOP**

On April 26, 2008, at approximately 10:15 a.m., Border Patrol Agent Kevin Zoetewey conducted a vehicle stop on a white BMW 5 series with no license plates on Monument Road, approximately one-quarter mile east of Hollister Street.  Due to the close proximity to the United States/Mexico International Border, this area is notorious for the presence of undocumented aliens attempting to further their illegal entry into United States. Just prior to stopping the vehicle, Agent Zoetewey observed the vehicle throwing trash, receipts and banking documents from the vehicle.

After the vehicle yielded, Agent Zoetewey approached the occupants and identified himself as a Border Patrol Agent and conducted an immigration inspection.  The driver, later identified as Ara Avetyants, was determined to be an Armenian national with a valid Permanent Resident Alien card.  The two passengers – later identified as Ashot Barsegian and Arsen Grishai Motivosyan – were also in possession of valid immigration documents and admitted to being Armenian nationals.  When asked what they were doing in the area, the Defendants said they were "looking to ride some horses."  During the inspection, Border Patrol Agent Richard Stallings arrived.  After it was confirmed that all three possessed valid immigration documents, Defendants were permitted to drive away.

**B.    SECOND STOP**

Approximately two hours later, Agent Stallings observed the same three individuals from the earlier stop walking in Border Field State park.  Thirty minutes later, Agent Stallings saw the white BMW 5 series parked at the entrance to the park.  All four doors of the vehicle were open and four individuals were getting ready to enter the vehicle.  Recalling that there were only three individuals in the vehicle during the earlier stop, Agent Stallings was suspicious when he saw four individuals entering the vehicle.  Agent Stallings observed that the individual about to enter the driver's seat was Avetyants; the other three individuals were about to enter as passengers.

As Agent Stallings approached the vehicle, the four individuals sat down on a log next to the BMW.  After greeting the individuals and identifying himself as a U.S. Border Patrol Agent, he conducted an immigration inspection of all four individuals. The three individuals who were previously

stopped were found in possession of valid immigration documents; the fourth individual was not. The fourth individual, identified as Ara Hakobyan, presented a California drivers license. Agent Stallings asked Hakobyan if he had any documents to prove his citizenship, and Hakobyan said "no." Agent Stallings asked all four individuals if they remembered him from the earlier stop. The Defendants all nodded their heads in agreement; Hakobyan did not. Agent Stallings asked where Hakobyan came from, and the Defendants said Hakobyan was just someone they met in the park. Hakobyan said he was from Glendale in the United States on asylum from Armenia. The Defendants then began to tell Agent Stallings about how they had just met Hakobyan in the park and were being friendly to one of their fellow countrymen by giving him a ride.

Agent Stallings asked Hakobyan how he got to the park. All four individuals appeared nervous and began to stutter. Hakobyan said he arrived by cab from Glendale, but could not recollect how much he paid for the cab ride. He said he was in the area "on vacation." Avetyants said he was giving Hakobyan a ride to "wherever he wants."

Agent Sean Sather arrived for back-up and conducted a records check on Hakobyan via dispatch. Records checks revealed that Hakobyan was denied asylum and ordered removed in January, 2008. Meanwhile, Agent Stallings asked Avetyants, the driver with the keys, for permission to search the vehicle. Avetyants gave Agent Stallings consent to search the vehicle. Agent Stalligns found laminated, uncut, 2x3 inch photos of Hakobyan in the glove box. Hakobyan admitted to having a brown duffle bag with his personal belongings in the trunk. At 12:15 p.m., all four individuals were arrested and transported to the Imperial Beach Border Patrol Station for further processing.

C.    **Material Witness Statement**

At the station, Hakobyan admitted to crossing the border at Border Field State Park by climbing over the international border fence. He said that the Defendants were going to take him to Los Angeles.

//
//
//
//
//

## II

## **DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

The Government produced 101 pages of discovery for all Defendants on May 22, 2008, including the reports from the Border Patrol Agents and documentation concerning the material witness's criminal and immigration history. On June 24, 2008, the Government produced an additional 40 pages of discovery consisting of copies of photographs taken of the vehicle and its contents. On June 27, 2008, the Government provided an additional 49 pages of discovery consisting of color photos and an addendum to the report.

**(1)     Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced to all Defendants a copy of the reports summarizing Defendants' field statements. As such, the Government has produced all of the Defendants' statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(2)     Arrest Reports, Notes, Dispatch Tapes and Audio/Video Recordings**

The Government has provided Defendants with all known reports related to Defendant's arrest in this case. The Government is not aware at this time of the existence of any tapes of any dispatch calls made relevant to this case. The Government will continue to comply with its obligation to provide to Defendant reports subject to Rule 16(a)(1)(A).

The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of

a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment.  If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(3) & (4)**     **Brady Material**

The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the defense.  Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item."  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery.  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over.  See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).   Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir.

1  1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

2  United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

3  **(5)    Defendants' Prior Records**

4       The Government has provided all information in its possession related to Defendants' prior

5  records. The Government has thereby fulfilled its duty of discovery under Rule 16(a)(1)(D).[1/]  See

6  United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent the Government obtains

7  additional documents reflecting Defendants' prior criminal records, the Government will provide those

8  to Defendants.

9  **(6)    Any Proposed 404(b) Evidence**

10       The Government will disclose in advance of trial the general nature of any "other bad acts" or

11 "other acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).

12 Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the

13 evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably

14 intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

15 **(7)    Evidence Seized**

16      The Government has produced photographs of items and documents seized from Defendants'

17 vehicle. The Government will produce copies of documents seized from the vehicle. The Government

18 will continue to comply with Rule 16(a)(1)(E)[2/] in allowing Defendant an opportunity, upon reasonable

19 notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or

20 control, and that is either material to the preparation of Defendant's defense, or is intended for use by

21 the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to

22 Defendant.

23 //

24

25

26   [1/]    Defendant Barsegian requests evidence of his prior record pursuant to Rule 16(a)(1)(B). The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

27

28   [2/]    Defendant Barsegian requests this discovery pursuant to Rule 16(a)(1)(c) [sic]. Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under  Rule 16(a)(1)(E).

1    //

2

3    **(8)     Tangible Objects**

4        The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3/] in allowing

5    Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and

6    tangible objects that are within its possession, custody, or control, and that is either material to the

7    preparation of Defendant's defense, or is intended for use by the Government as evidence during its

8    case-in-chief at trial, or was obtained from or belongs to Defendant, including the vehicle.   The

9    Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens,

10   767 F.2d 574, 584 (9th Cir. 1984).

11   **(9)     Evidence of Bias or Motive to Lie**

12       The Government recognizes its obligation under Brady and Giglio to provide evidence that could

13   be used to impeach Government witnesses including material information regarding demonstrable bias

14   or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the

15   part of prospective government witnesses.  If the Government discovers the existence of information

16   related to a government witness's bias or motive to lie, the information will be provided to the

17   Defendant.

18   **(10)    Impeachment Evidence**

19       As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to

20   provide material evidence that could be used to impeach Government witnesses.

21    **(11)    Evidence of Criminal Investigation of Any Government Witness**

22       Defendant is not entitled to any evidence that a prospective witness is under criminal

23   investigation by federal, state, or local authorities.  The Government is under no obligation to turn over

24   the criminal records or rap sheet of its potential witnesses.  United States v. Taylor, 542 F.2d 1023, 1026

25   (8th Cir. 1976).  The Government will, however, provide the conviction record, if any, which could be

26

27   _____

28       [3/]     Defendant makes this request under Fed. R. Crim. P. 16(a)(2)(c) [sic]. Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E) which  applies to the discovery of documents and objects.

used to impeach witnesses the United States intends to call in its case-in-chief.

//

**(12)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic, because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(13)    Witness Addresses**

The Government has provided Defendant with the reports containing the names and addresses of each prospective Government witness, whether or not the United States intends to call the witness at trial.  In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (<u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996); <u>see also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(14)    Name of Witnesses Favorable to the Defendants**

The Government is not aware of the names of any witnesses favorable to the Defendant's case.  If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

1   //

2   //

3   **(15)     Statements Relevant to the Defense**

4          The Government will provide all statements relevant to Defendant as required by Rule 16,

5   <u>Brady</u>, and <u>Jencks</u>.    The Government is not all possible information and evidence regarding any

6   speculative defense claimed by Defendant. <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (<u>per curiam</u>)

7   (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory

8   evidence are not subject to disclosure under <u>Brady</u>).

9   **(16)     Jencks Act Material**

10          Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal

11  Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination,

12  the Government must give the Defendant any "statement" in the Government's possession that was

13  made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b).

14  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed

15  or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded

16  transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18

17  U.S.C. §3500(e).    If notes are read back to a witness to see whether or not the government agent

18  correctly understood what the witness was saying, that act constitutes "adoption by the witness" for

19  purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (<u>citing</u>

20  <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)).  There is no applicable Jencks material at this time.

21  If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act.

22

23  **(17)     Giglio Information**

24          An agreement that the Government makes with a witness for testimony in exchange for money

25  or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure

26  as impeachment evidence under <u>Brady</u> and <u>Giglio</u>. <u>See</u> <u>United States v. Kojayan</u>, 8 F.3d 1315, 1322-23

27  (9th Cir. 1993); <u>Benn v. Lambert</u>, 238 F.3d 1040, 1054-60 (9th Cir. 2002).    At this time, the

28  Government is not aware of any <u>Giglio</u> information related to this case.  If the Government discovers

the existence of <u>Giglio</u> information, the information will be provided to the Defendant.

//

//

**(18)    <u>Report of Scientific Tests or Examinations</u>**

At this time, the Government is not aware of any scientific tests.  If the Government becomes aware of additional scientific tests or experiments, it will provide Defendants with the results of any scientific tests or examinations in accordance with Rule 16(a)(1)(F)[4/] when those tests results are received.

**(19)    <u>Henthorn Material</u>**

The Government will comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality.  <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in camera</u> inspection and review.

**(20)    <u>Informants and Cooperating Witnesses</u>**

If the United States determines that a cooperating, percipient witnesses will be testifying against Defendants at trial, or if there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection.  <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. 53, 60-61 (1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).  At this time, the United States is not aware of any information derived from any informants or other sources which exculpates or tends to exculpate Defendants.

---

[4/]    Defendant makes this request pursuant to Rule 16(a)(1)(D).  Because that sub-section pertains to a defendant's prior record, the United States interprets this as a request under Rule 16(a)(1)(F), which is the sub-section pertaining to examinations and tests.

**(21)    Expert Witness**

The Government will provide notice prior to trial of any expert witnesses that will be called to testify at trial.

**(22)    Personnel Records of Government Officers Involved in the Arrest**

The Government objects to this request as over-broad.  As articulated elsewhere in this response, the Government will comply with <u>Henthorn</u> and <u>Giglio</u>, neither of which require the production of all citizen complaints and internal affairs documents.

**(23)    Training of Relevant Law Enforcement Agencies**

The United States objects to any request for discovery of law enforcement policies, instructions and training manuals.  Defendant Barsegian has failed to articulate how such information is relevant or discoverable under Rule 16 or any other discovery rule.  Moreover, Defendant's request is over-broad.  Defendant Barsegian requests "all written or otherwise attainable information regarding the training of ICE agents at ports of entry in California to detect or discover narcotics. . ." [Def. Mem. At 7.] This case involves alien smuggling, not narcotics smuggling.   The apprehension was made by Border Patrol Agents, not Immigration and Customs Enforcement ("ICE").  There are no ICE agents involved in this case, nor did any of the events occur at a port of entry.  Defendant's request is over-broad and irrelevant and should be denied.

**(24)    Names and Contact Information for All Agents in the Field at the Time of Arrest**

The United States objects to this request as over-broad.  The United States has provided reports containing the names of all the Border Patrol agents who were witnesses to the events in the field.  Other agents who may have been working in the field at the time of Defendants' arrest but who were not witnesses to this incident are not relevant to this case.  The contact phone number for all the Border Patrol agents involved in this case was provided on the magistrate information sheet.

**(25)    Agreements Between the Government and Witnesses**

Defendant Barsegian has failed to cite any support for his discovery request.  As articulated elsewhere, the United States will comply with its obligations under <u>Giglio</u> to provide information relevant to a witnesses' bias or incentive to lie.

**(26)    TECS Reports**

Reports from the Treasury Enforcement Communication System ("TECS") are not subject to Rule 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the Government as evidence during its case-in-chief.  If the United States intends to introduce TECS information at trial in its case-in-chief, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

Evidence that the Government intends to use for impeachment or rebuttal is not considered evidence for use in the Government's case-in-chief. *See* United States v. Givens, 767 F.2d 574, 582-583 (9th Cir. 1985); United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991) (holding that Government is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that trial court order requiring Government to disclose "any and all impeachment evidence . . . which tends to negate guilt" including rebuttal evidence exceeded scope of court's authority under Rule 16).  The Government at this time does not intend to use TECS evidence as part of its case-in-chief, but reserves the right to impeach Defendants under Rule 607 with TECS evidence should it become relevant during Defendants' case.

Rule 16 also permits discovery of information that is "relevant to the development of a possible defense." United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984).  To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.  United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990).  A defendant must make a specific request for an item and articulate how it is helpful to the defense.  *See* United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."  Mandel, 914 F.2d at 1219.  Here, although Defendant Barsegian has made a specific request for the TECS reports, he has not made any showing of materiality.

**(27)    Opportunity to Weigh , View and Photograph Contraband**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of

Defendants' defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendants.

It is unclear what "contraband" Defendant Barsegian wishes to view, photograph, and weigh. The only "contraband" involved in this case is the undocumented alien, Mr. Hakobyan, who was being transported by Defendants. The Government cannot force Mr. Hakobyan to have his weight measured, but photographs of Mr. Hakobyan were produced in discovery. The United States has no objection to Mr. Hakobyan consenting to be weighed.

**(28)   DEA-7 Form**

The Government objects to this request as being irrelevant. DEA-7 Forms are generated by the Drug Enforcement Administration ("DEA") when narcotics are seized and analyzed at a laboratory. Because this case involves alien smuggling as opposed to narcotics smuggling, the Government does not expect to conduct a drug analysis and no DEA-7 will be produced.

If Defendants are aware that there were narcotics hidden in their vehicle in addition to the alien found in the vehicle, the United States requests that Defendants advise the United States regarding the location of the narcotics. The Government will ensure that the narcotics are removed, analyzed and the DEA-7 promptly produced in discovery.

**(29)   Narcotics Detector Dog Information**

The Government objects to this request because the requested information is not relevant. This case involves alien smuggling, not drug smuggling. No narcotics detector dogs were involved in this case.

**III**

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.    All Evidence That Defendants Intends To Introduce In Their Case-In-Chief**

13                          Criminal Case No. 08cr1455-BEN

1    Since the Government will honor Defendants' requests for disclosure under Rule 16(a)(1)(E),

2   the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the

3   Government requests that Defendant permit the Government to inspect, copy and photograph any and

4   all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which

5   are within the possession, custody, or control of Defendants and which Defendants intends to introduce

6   as evidence in their case-in-chief at trial.

7    The Government further requests that it be permitted to inspect and copy or photograph any

8   results or reports of physical or mental examinations and of scientific tests or experiments made in

9   connection with this case, which are in the possession and control of Defendants, which they intend to

10   introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants

11   intends to call as a witness. The Government also requests that the Court make such order as it deems

12   necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery

13   to which it is entitled.

14   **B.** **<u>Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendants)</u>**

15    Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

16   production of the prior statements of all witnesses, except a statement made by Defendants. The time

17   frame established by Rule 26.2 requires the statements to be provided to the Government after the

18   witness has testified. However, to expedite trial proceedings, the Government hereby requests that

19   Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before

20   trial to be set by the Court. Such an order should include any form in which these statements are

21   memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

22   **V**

23   **<u>CONCLUSION</u>**

24    For the foregoing reasons, the Government requests that the Court deny Defendants' motions,

25   except where unopposed, and grant the Government's motion for reciprocal discovery.

26    DATED: July 9, 2008.

27                                        Respectfully submitted,
                                        KAREN P. HEWITT
28                                        United States Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/*Rebecca Kanter*
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

1
2
3
4
                        UNITED STATES DISTRICT COURT

5
                       SOUTHERN DISTRICT OF CALIFORNIA

6
    UNITED STATES OF AMERICA,              )    Criminal Case No. 08cr1455-BEN
7                                          )
                            Plaintiff,     )
8                                          )    CERTIFICATE OF SERVICE
                        v.                 )
9                                          )
    ARA AVETYANTS, et. al,                 )
10                                         )
                           Defendant.      )
11   _____       )

12
    IT IS HEREBY CERTIFIED THAT:

13
        I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of
14  age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

15      I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND
    OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the
16  District Court using its ECF System, which electronically notifies them.

17          1)      GaroGhazarian
            2)      Kris Kraus
18          3)      Jodi Thorp

19      I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
    Service, to the following non-ECF participants on this case:
20
        None
21
    the last known address, at which place there is delivery service of mail from the United States
22  Postal Service.

23      I declare under penalty of perjury that the foregoing is true and correct.

24      Executed on July 10, 2008.

25                                              /s/ ***Rebecca Kanter***
                                                REBECCA S. KANTER
26
27
28