KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARA AVETYANTS (1),<br>ARSHOT BARSEGIAN (2),<br>ARSEN MOTIVOSYAN (3),<br><br>Defendants. | Criminal Case No. 08cr1455-BEN<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) DISMISS INDICTMENT DUE TO MIS-INSTRUCTION OF THE GRAND JURY;**<br>**(2) PRESERVE EVIDENCE;**<br>**(3) COMPEL DISCOVERY;**<br>**(4) SEVER DEFENDANTS;**<br>**(5) SUPPRESS STATEMENTS; AND**<br>**(6) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>Date:       August 11, 2008<br>Time:       2:00 p.m.<br>Courtroom:  3<br><br>The Honorable Roger T. Benitez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Dismiss the Indictment Due to Mis-Instruction of the Grand Jury, Preserve Evidence, Compel Discovery, Sever Defendants, Suppress Statements and Grant Leave to File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

# I

## STATEMENT OF FACTS

**A.    INITIAL STOP**

On April 26, 2008, at approximately 10:15 a.m., Border Patrol Agent Kevin Zoetewey conducted a vehicle stop on a white BMW 5 series with no license plates on Monument Road, approximately one-quarter mile east of Hollister Street.  Due to the close proximity to the United States/Mexico International Border, this area is notorious for the presence of undocumented aliens attempting to further their illegal entry into United States. Just prior to stopping the vehicle, Agent Zoetewey observed the occupants of the vehicle throwing trash, receipts and banking documents from the vehicle.

After the vehicle yielded, Agent Zoetewey approached the occupants and identified himself as a Border Patrol Agent and conducted an immigration inspection.  The driver, later identified as Ara Avetyants, was determined to be an Armenian national with a valid Permanent Resident Alien card.  The two passengers – later identified as Ashot Barsegian and Arsen Grishai Motivosyan – were also in possession of valid immigration documents and admitted to being Armenian nationals.  When asked what they were doing in the area, the Defendants said they were "looking to ride some horses."  During the stop, Border Patrol Agent Richard Stallings arrived.  After it was confirmed that all three possessed valid immigration documents, Defendants were permitted to drive away.

**B.    SECOND STOP**

Approximately two hours later, Agent Stallings observed the same three individuals from the earlier stop walking in Border Field State park.  Thirty minutes later, Agent Stallings saw the white BMW 5 series parked at the entrance to the park.  All four doors of the vehicle were open and four individuals were getting ready to enter the vehicle.  Recalling that there were only three individuals in the vehicle during the earlier stop, Agent Stallings was suspicious when he saw four individuals entering the vehicle.  Agent Stallings observed that the individual about to enter the driver's seat was Avetyants; the other three individuals were about to enter as passengers.

As Agent Stallings approached the vehicle, the four individuals sat down on a log next to the BMW.  After greeting the individuals and identifying himself as a U.S. Border Patrol Agent, he conducted an immigration inspection of all four individuals. The three individuals who were previously

stopped were found in possession of valid immigration documents; the fourth individual was not. The fourth individual, identified as Ara Hakobyan, presented a California drivers license. Agent Stallings asked Hakobyan if he had any documents to prove his citizenship, and Hakobyan said "no." Agent Stallings asked all four individuals if they remembered him from the earlier stop. The Defendants all nodded their heads in agreement; Hakobyan did not. Agent Stallings asked where Hakobyan came from, and the Defendants said Hakobyan was just someone they met in the park. Hakobyan said he was from Glendale in the United States on asylum from Armenia. The Defendants then began to tell Agent Stallings about how they had just met Hakobyan in the park and were being friendly to one of their fellow countrymen by giving him a ride.

Agent Stallings asked Hakobyan how he got to the park. All four individuals appeared nervous and began to stutter. Hakobyan said he arrived by cab from Glendale, but could not recollect how much he paid for the cab ride. He said he was in the area "on vacation." Avetyants said he was giving Hakobyan a ride to "wherever he wants."

Agent Sean Sather arrived for back-up and conducted a records check on Hakobyan via dispatch. Records checks revealed that Hakobyan was denied asylum and ordered removed in January, 2008. Meanwhile, Agent Stallings asked Avetyants, the driver with the keys, for permission to search the vehicle. Avetyants gave Agent Stallings consent to search the vehicle. Agent Stallings found laminated, uncut, 2x3 inch photos of Hakobyan in the glove box. Hakobyan admitted to having a brown duffle bag with his personal belongings in the trunk. At 12:15 p.m., all four individuals were arrested and transported to the Imperial Beach Border Patrol Station for further processing.

**C.**    **Material Witness Statement**

At the station, Hakobyan admitted to crossing the border at Border Field State Park by climbing over the international border fence. He said that the Defendants were going to take him to Los Angeles.

//

//

//

//

//

**II**

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Defendant Motivosyan, joined by Defendant Barsegian, moves to dismiss the indictment against him for alleged errors in Judge Burns's instruction of the grand jury panel.  The United States explicitly incorporates by reference the briefing on this issue submitted in United States v. Bermudez-Jimenez, 07CR1372-JAH, and United States v. Martinez-Covarrubias, 07CR0491-BTM.[1]  This motion has been denied by each court that has considered it, and should also be denied in this case.

**III**

**DEFENDANT'S MOTION TO PRESERVE EVIDENCE**

Defendant Motivosyan requests the preservation of all physical evidence in this case.  The United States has no objection to preserving evidence for Defendants' inspection and review for a reasonable period of time.  However, the United States objects to an order requiring the United States to preserve the evidence indefinitely.

**IV**

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

The Government produced 101  pages of discovery for all Defendants on May 22, 2008, including the reports from the Border Patrol agents and documentation concerning the material witnesses's criminal and immigration history.  On June 24, 2008, the Government produced an additional 40 pages of discovery consisting of copies of photographs taken of the vehicle and its contents.  On June 27, 2008, the Government provided an additional 49 pages of discovery consisting of color photos and an addendum to the report.

**(1)**    **Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements.  (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government has produced to all Defendants a copy of the reports summarizing Defendants' field statements.  As

---

[1]    If the Court wishes to see additional briefing on this issue or requires a copy of the United States' briefs in the cases cited above, the Government will provide those materials on request.

4

such, the Government has produced all of the Defendants' statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(2)     Arrest Reports, Notes and Dispatch Tapes**

The Government has provided Defendants with all known reports related to Defendant's arrest in this case. The Government is not aware at this time of the existence of any tapes of any dispatch calls made relevant to this case. The Government will continue to comply with its obligation to provide to Defendant reports subject to Rule 16(a)(1)(A).

The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(3) & (4)     Brady Material**

The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).

1  "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability

2  that, had the evidence been disclosed to the defense, the result of the proceeding would have been

3  different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>).  The final determination

4  of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles</u>

5  <u>v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

6      <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery.  <u>See</u>

7  <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000) (<u>per curiam</u>).  Under <u>Brady</u>, the United

8  States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see United</u>

9  <u>States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other

10 sources (<u>see United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

11 defendant already possesses (<u>see United States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999)

12 <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

13 Attorney could not reasonably be imputed to have knowledge or control over.  <u>See United States v.</u>

14 <u>Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001).    <u>Brady</u> does not require the Government "to create

15 exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir.

16 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

17 <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976).

18 **(5)    Defendants' Prior Records**

19      The Government has provided all information in its possession related to Defendants' prior

20 records.  The Government has thereby fulfilled its duty of discovery under Rule 16(a)(1)(D).[2/]  <u>See</u>

21 <u>United States v. Audelo-Sanchez</u>, 923 F.2d 129 (9th Cir. 1990).  To the extent the Government obtains

22 additional documents reflecting Defendants' prior criminal records, the Government will provide those

23 to Defendants.

24 //

25 //

26

27

28      [2/]     Defendant Motivosyan requests evidence of his prior record pursuant to Rule 16(a)(1)(B).
   The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the
   discovery rule pertaining to a defendant's prior record.

**(6)    Any Proposed 404(b) Evidence**

The Government will disclose in advance of trial the general nature of any "other bad acts" or "other acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)    Evidence Seized**

The Government has produced photographs of items and documents seized from Defendants' vehicle. The Government will produce copies of documents seized from the vehicle. The Government will continue to comply with Rule 16(a)(1)(E)[3] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(8)    Henthorn Material**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

//

//

_____

[3]    Defendant Motivosyan requests this discovery pursuant to Rule 16(a)(1)(C). Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E).

//

### (9)    Tangible Objects

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[4] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant, including the vehicle.   The Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### (10)    Expert Witness

The Government will provide notice prior to trial of any expert witnesses that will be called to testify at trial.

### (11)    Impeachment Evidence

As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

### (13)    Evidence of Bias or Motive to Lie

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses.  If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

### (14)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity

The Government recognizes its obligation under Brady and Giglio to provide material evidence

---

[4]    Defendant makes this request under Fed. R. Crim. P. 16(a)(2)(C).  Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E) which  applies to the discovery of documents and objects.

that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic, because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(15)    <u>Witness Addresses</u>**

The Government has provided Defendant with the reports containing the names and addresses of each prospective Government witness, whether or not the United States intends to call the witness at trial.  In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (<u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996); <u>see</u> <u>also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(16)    <u>Name of Witnesses Favorable to the Defendants</u>**

The Government is not aware of the names of any witnesses favorable to the Defendant's case that have not already been disclosed.  If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(17)    <u>Statements Relevant to the Defense</u>**

The Government will provide all statements relevant to Defendant as required by Rule 16, <u>Brady</u>, and <u>Jencks</u>.    The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (<u>per</u> <u>curiam</u>)

(holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(18)    Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).   If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  There is no applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act.

**(19)    Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio.  See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).  At this time, the Government is not aware of any Giglio information related to this case.  If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(20)    Agreements Between the Government and Witnesses**

Defendant Motivosyan has failed to cite any support for his discovery request.  As articulated elsewhere, the United States will comply with its obligations under Giglio to provide information relevant to a witnesses' bias or incentive to lie.

**(21)    Informants and Cooperating Witnesses**

If the United States determines that a cooperating, percipient witnesses will be testifying against Defendants at trial, or if there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997). At this time, the United States is not aware of any information derived from any informants or other sources which exculpates or tends to exculpate Defendants.

**(22)    Bias By Informants or Cooperating Witnesses**

As articulated elsewhere, the Government is not aware of any Giglio information related to this case. If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(23)    Personnel Records of Government Officers Involved in the Arrest**

The Government objects to this request as over-broad. As articulated elsewhere in this response, the Government will comply with Henthorn and Giglio, neither of which require the production of all citizen complaints and internal affairs documents.

**(24)    Training of Relevant Law Enforcement Agencies**

The United States objects to any request for discovery of law enforcement policies, instructions and training manuals. Defendant Motivosyan has failed to articulate how such information is relevant or discoverable under Rule 16 or any other discovery rule.

**(25)    Opportunity to View and Photograph Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendants' defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendants.

**V**

**DEFENDANT'S MOTION TO SEVER**

Defendant Motivosyan moves to sever his trial from that of his co-defendants. This Court should

11

1   deny his motion because he has failed to show that he would suffer clear, manifest, and undue prejudice.

2       Under Rule 8(b), joinder is proper where the defendants "are alleged to have participated in the

3   same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

4   F.R.Crim.P. 8(b).  Rule  8(b) is construed liberally in favor of joinder.  United States v. Sanchez-Lopez,

5   879 F.2d 541, 551 (9th Cir. 1989); see also United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir.

6   1988) (citation omitted) ("[J]oinder is the rule rather than the exception."); see also  United States v.

7   Doe, 655 F.2d 920, 926 (9th Cir. 1980) ("Co-defendants jointly charged are, prima facie, to be jointly

8   tried.").

9       Severance is appropriate under Rule 14 only where the defendant makes a showing of "clear,

10  manifest, or undue prejudice."  United States v. VonWillie, 59 F.3d 922, 930 (9th Cir. 1995).  That is,

11  the defendant "must demonstrate that the joint trial impinged on a fundamental trial right or

12  compromised the fairness of the proceedings in a tangible way."  United States v. Hanley, 190 F.3d

13  1017, 1027 (9th Cir. 1999). See also United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986) ("The

14  defendant has the burden of proving that the joint trial was manifestly prejudicial.").

15      The determination whether to sever defendants under Rule 14 is committed to the district court's

16  sound discretion and will not be reversed absent an abuse of that discretion.  United States v. Lopez, 477

17  F.3d 1110, 1116 (9th Cir. 2007).  "The test for abuse of discretion by the district court is whether a joint

18  trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way,

19  by ordering a separate trial."  United States v. Decoud, 456 F.3d 996, 1008 (9th Cir. 2006).

20      Four factors are relevant in evaluating a request for severance of defendants:

21      (1)   whether the jury may reasonably be expected to collate and appraise the
              individual evidence against each defendant;
22      (2)   the judge's diligence in instructing the jury on the limited purposes for which certain
              evidence may be used;
23      (3)   whether the nature of the evidence and the legal concepts involved are within the
              competence of the ordinary juror; and
24      (4)   whether [defendants] could show, with some particularity, a risk that the joint trial would
              compromise a specific trial right of one of the defendants, or prevent the jury from
25            making a reliable judgment about guilt or innocence.

26  United States v. Fernandez, 388 F.3d  1199, 1241 (9th Cir. 2004).  The first two factors are the most

27  important. Id. Defendant Motivosyan has failed to articulate how, based on these four factors, severance

28  is warranted in this case.  Instead, he argues that severance is necessary to protect his confrontation

12

clause rights and because he and the other defendants "will present mutually antagonistic defenses." Def. Mem. P&A at 26.  Neither contention warrants severance in this case.

//

### 1.   Defendants' Confrontation Clause Rights Are Not Jeopardized By Joinder

Defendant Motivosyan speculates that the Government may introduce at trial statements made by his co-defendants that would implicate Motivosyan's Confrontation Clause rights. Defendant's speculation is insufficient to meet his burden of establishing that severance is required.  As detailed in the reports provided to Defendants in discovery, the only statements made by any of the Defendants were made in the field as part of an immigration stop.  See infra at §V.  The statements were made jointly by all Defendants, with the exception of two statements made by Defendant Avetyants only: (1) "We were going to give [the material witness] a ride" (2) to "wherever he wants."   The scope of Defendant Motivosyan's concern, therefore, must necessarily be limited to these two statements.

Prejudice may result from the introduction of a codefendant's extrajudicial confession if that confession also incriminates the defendant.  Bruton v. United States, 391 U.S. 123 (1968). However, there is no Bruton violation and severance is unnecessary if the defendant is not directly implicated by his co-defendant's out-of-court statement.  Richardson v. Marsh, 481 U.S. 200, 208-09 (1987).  Only Defendant Avetyants first statement arguably implicates Defendant Motivosyan. To the extent the Government intends to introduce at trial a statement that falls within the scope of Bruton and Richardson, the statements will be appropriately redacted.  See U.S. v. Yousef, 327 F.3d 56, 150 (2d Cir. 2003) (finding there was no Bruton violation because the co-defendant's statement was redacted of defendant's name and alias, and "[n]othing in the redacted statement, standing by itself, implicated [defendant] or made the fact of redaction obvious.")

### 2.   Defendant Motivosyan Has Failed To Show That the Core of His Defense Is Irreconcilable with His Co-Defendants' Defense

Although Defendant Motivosyan acknowledges that he has the burden to show that the possibility of antagonistic defenses supports severance, he has failed to offer any specific information in this regard.  "To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own

defense that the acceptance of the codefendant's theory by the jury precludes the acquittal of the defendant." United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996). See also Zafiro, 506 U.S. at 540 ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."). United States v. Angwin, 271 F.3d 786, 795-96 (9th Cir. 2001) (rejecting a defendant's argument that ignorance is irreconcilable with a defense based on a lack of guilty intent such as duress), *overruled on other grounds*, United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007) (en banc).

In Throckmorton, Throckmorton was tried with a co-defendant for conspiracy to import a controlled substance. Throckmorton moved to sever trials, as the co-defendant's defense was that he had, in fact, imported the narcotics (along with Throckmorton), but had done so under color of public authority. Throckmorton's defense was a theory of insufficiency of the evidence. The Ninth Circuit affirmed the district court's denial of the motion to sever:

> It is clear [co-defendant's] defense was antagonistic to Throckmorton's. <u>Antagonism between defenses of the desire of one defendant to exculpate himself by inculpating a codefendant, however, is insufficient to require severance.</u> To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant.

Throckmorton, 87 F.3d at 1072 (emphasis added, citation omitted).

Defendant Motivosyan's conclusory assertions that he "anticipates" that the Defendants will offer mutually exclusive defenses is totally inadequate to making this required showing. At most, Defendant has raised the speculative possibility of antagonistic defenses. The law is clear that this possibility – unsupported by facts establishing irreconcilable defenses – is insufficient to justify severance as a matter of law.

**3.     <u>Use Of Limiting Instructions</u>**

To the extent there is any lingering concern about prejudice caused by the joinder of defendants, proper limiting instructions regarding the evidence are sufficient to resolve any such concerns. The Ninth Circuit has "repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." Fernandez, 388 F.3d at 1243; Zafiro, 506 U.S. at 540-

41.

In <u>Fernandez</u>, a case involving 11 defendants charged with RICO and drug trafficking violations, the district court instructed the jury that it "must consider the evidence against each defendant and evaluate each defendant's guilt separately." <u>Fernandez</u>, 388 F.3d at 1243. In combination with the general jury instructions pertaining to conspiracies, the Ninth Circuit found this limiting instruction "more than sufficient to guard against the possibility of prejudice" in that multi-defendant trial. <u>Id</u>. The Government has no objection to this Court providing appropriate limiting instructions during the trial in this case to guard against any prejudice claimed by defendants.

## VI

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Defendant Motivosyan moves to suppress his statements. The only statements made by any Defendants were the statements made in the field during each of the two immigration stops. Because Defendants were not in custody, their statements were not the result of a custodial interrogation and did not need to be preceded by <u>Miranda</u> warnings.

### A.    Standards Governing Admissibility of Statements

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. *See* <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. *See* <u>id.</u> (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); *cf.* <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).

Immigration officers are authorized "[t]o interrogate any alien or person believed to be an alien regarding his right to be or remain in the United States." 8 U.S.C. § 1357(a)(1); 8 C.F.R. § 287.5(a). Any such interrogation must comply with constitutional standards regarding searches and seizures. See United States v. Brigoni-Ponce, 422 U.S. 873 (1975). Federal regulations codify the constitutional case law with respect to interrogations by immigration officers:

> An immigration officer, like any other person, has the right to ask questions of anyone as long as the immigration officer does not restrain the freedom of an individual, not under arrest, to walk away. If the immigration officer has a reasonable suspicion, based upon specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning.

8 C.F.R. § 287.8(b).

## B.    Standards Governing Grant or Denial of Evidentiary Hearing

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

Defendant has as much information as the Government in regards to the statements he made. See Batiste, 868 F.2d at 1092. At least in the context of motions to suppress statements, which require police misconduct suffered by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct. Defendant Motivosyan has failed to do so. Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any intent by Congress to alter the longstanding

1    rule vesting the form of proof on matters for the court in the discretion of the court.  Batiste, 868 F.2d

2    at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district

3    court.") (citation and quotation marks omitted).

4    **C.    Adequate Proof to Support Rejection of a Motion to Suppress**

5         The Ninth Circuit has expressly stated that a proffer by the United States  based on the statement

6    of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense

7    fails to adduce specific and material facts.  *See* Batiste, 868 F.2d at 1092.  Moreover, the Ninth Circuit

8    has held that a District Court may properly deny a request for an evidentiary hearing on a motion to

9    suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule.

10   See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d

11   616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the

12   moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court

13   to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857

14   (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving

15   papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact

16   exist).  Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing

17   if the grounds for suppression consist solely of conclusory allegations of illegality.  See

18   United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson

19   did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's

20   declaration and points and authorities submitted in support of motion to suppress indicated no contested

21   issues of fact).

22   **D.    Defendant's Statements Should Not Be Suppressed**

23        In this case, although Defendants were not read their Miranda rights prior to being asked in the

24   field about their immigration status and the purpose of their presence in an area known for illegal

25   smuggling activity, it was not required because they was not in custody.  Defendant has not alleged any

26   facts suggesting that he had been taken into custody.  He merely asserts in conclusory fashion that he

27   "was in custody once he was stopped in his car and again once he was stopped on the street."  Def.

28   Mem. P. & A. at 29.

Custody involves the deprivation of "freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444. As evidenced by the probable cause statement in this case, Defendants were merely subjected to a brief investigatory stop. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968). The stop was akin to a routine traffic stop, which is not a "custodial" situation despite the obvious limitations it puts on the drivers and passengers freedom of action. <u>See</u> <u>U.S. v. Berkemer</u>, 468 U.S. 420, 441 (1984) (acknowledging that a traffic stop necessarily curtails a driver's freedom of action, but the coerciveness of the stop is limited by its brief and public nature.) The stop in this case was merely a border stop made in the presence of multiple officers and three other suspects. <u>See</u> <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 730-32 (9th Cir. 2001) (no custody during border stop because questioning occurred in public with 2 officers and 15-20 suspects), <u>amended by</u> 255 F.3d 1154 (9th Cir. 2001). Because Defendant has failed to articulate any factual disputes that would indicate that he was in custody, his statements in the field did not need to be preceded by <u>Miranda</u> warnings and should not be suppressed.

## VII

## **<u>DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS</u>**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

## VIII

## **<u>GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY</u>**

**A.** **<u>All Evidence That Defendants Intends To Introduce In Their Case-In-Chief</u>**

Since the Government will honor Defendants' requests for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendants and which Defendants intends to introduce as evidence in their case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any

results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendants, which they intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B.      Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendants)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendants. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**IX**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendants' motions, except where unopposed, and grant the Government's motion for reciprocal discovery.


DATED: July 31, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/**_Rebecca Kanter_**
REBECCA S. KANTER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr1455-BEN |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| ARA AVETYANTS, et. al, | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1)    Garo Ghazarian
    2)    Kris Kraus
    3)    Jodi Thorp

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2008.

                          /s/ ***Rebecca Kanter***
                          REBECCA S. KANTER